UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAWN L. BROWN,** | : | |
| **PLAINTIFF** | : | **CIVIL ACTION LAW** |
| | : | |
| **v.** | : | **JURY TRIAL** |
| | : | **DEMANDED** |
| **COMMONWEALTH OF** | : | |
| **PENNSYLVANIA, DEPARTMENT OF** | : | |
| **CORRECTIONS,** | : | |
| **DEFENDANT** | : | **Electronically Filed** |

## COMPLAINT

JURISDICTION

1. A notice of right to sue for EEOC charge number 530-2012-01913 was issued by the U.S. Department of Justice on January 29, 2015, and was received on or about February 9, 2015; PHRC letter of right to sue was issued on May 8, 2015 for case no. 201201051.

*2.* This action is brought to redress violations of Plaintiff's rights as secured by Title VII of the Civil Rights Act of 1964, *as amended*, and the Pennsylvania Human Relations Act, 43 Pa. C.S. §§ 951, *et seq.* The United States District Court for the Middle District of Pennsylvania has jurisdiction over this cause of action pursuant to 28 U.S.C. § 1331, and

42 U.S.C. § 2000, *et seq.* The United States District Court for the Middle District of Pennsylvania has supplemental jurisdiction over the pendant state claim pursuant to 28 U.S.C. § 1367 (a).

<u>VENUE</u>

3. The United States District Court for the Middle District of Pennsylvania is the proper venue for this cause of action by reason of the activities of the Defendants complained of herein having occurred within the geographical confines of this Court's jurisdiction.

<u>PARTIES</u>

4. The Plaintiff, Dawn L. Brown, is a female, residing in Pennsylvania.

5. Defendant Commonwealth Pennsylvania, Department of Corrections, is an agency of the Commonwealth of Pennsylvania (hereinafter "Commonwealth").

**<u>PLAINTIFF'S CLAIM OF RETALIATION</u>**

6. The Plaintiff was hired by the Defendant as a Corrections

Officer I and assigned to SCI Camp Hill in July 2005.

   7.   On or about October 30, 2009, the Plaintiff reported a sexual assault and sexual harassment committed by Sgt. Harmon.

   8.   In January of 2010 the Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC charge number 846-2010-19859; this was filed with the PHRC through the dual filing agreement with EEOC ) against Defendant Commonwealth alleging, among other things, she was retaliated against because she filed the complaint against Sgt. Harmon.

   9.   Defendant Harmon remained the Plaintiff's direct supervisor and additional retaliatory harassment was meted out by Sgt.Harmon and management through May, 2010.

   10.   As a result of the stress of working for Sgt. Harmon, the plaintiff became fearful, anxious and depressed.

   11.   To recover from her fear, anxiety and depression she used sick leave.

   12.   In May of 2010 the Plaintiff filed a complaint with the Defendant Commonwealth's Equal Employment Office alleging Sgt. Harmon continued to harass her and that management condoned the behavior.

   13.   In late June and early July of 2010, the plaintiff was absent due

to surgery.

14. Because she did not have much sick leave she asked to borrow some of her husband's sick leave.

15. Borrowing of sick leave was an approved existing practice.

16. Defendant refused to allow the Plaintiff to borrow her husband's sick leave.

17. In July of 2010 an inmate convicted by a jury in which the Plaintiff was a juror, transferred to SCI Camp Hill.

18. Pursuant to Department of Corrections regulations that inmate was place in the Restricted Housing Unit (RHU) to protect the Plaintiff.

19. The regulations provide the inmate should have been transferred to another corrections institution.

20. Yet, in less than a week, in violation of the Department of Corrections regulations, the inmate was placed in the general population where he had greater access to the Plaintiff.

21. When she learned of this, Plaintiff complained asserting she feared the Defendant Commonwealth was recklessly putting her life in danger.

22. Being fearful her employer was willing to subject her to danger , exacerbated her anxiety and depression.

23. The Plaintiff used sick leave to address her anxiety and depression.

24. The inmate remained in general population until he was transferred in September of 2010.

25. As a result she was placed in danger for several months.

26. In September of 2010 after surgery on her teeth, the Plaintiff was placed on pain medication.

27. Department of Corrections regulations prohibited reporting to work under the influence of pain medication.

28. The Plaintiff asked for two days off because of the medication, and had a doctor's certification to support her request.

29. The request was denied, but had been approved for corrections officers who had not filed discrimination complaints.

30. This denial contributed to the Plaintiff getting a one day suspension.

31. In December of 2010 the Plaintiff reported to Defendant Commonwealth a female corrections officer who was having a personal relationship with, at least, five inmates; the Plaintiff did not know the names of the inmates.

32. To protect herself, the Plaintiff asked the Defendant Commonwealth to identify the five inmates involved.

33. In retaliation for filing her discrimination and retaliation complaints, Defendant Commonwealth refused to identify the inmates.

34. An investigation followed and ultimately the correction officer was discharged in 2011.

35. To date, Defendant Commonwealth refuses to identify the inmates.

36. As a direct result of not knowing which inmates might seek to harm her, the Plaintiff became more fearful, anxious and depressed in her workplace.

37. In February of 2011 the Plaintiff was given a medical leave of absence.

38. In April of 2011 the Plaintiff's medical provider authorized her to return to work, provided she was not forced to work with corrections officers.

39. To accommodate the Plaintiff, the Defendant Commonwealth assigned the Plaintiff to light duty in the mail room.

40. In early July of 2011, contrary to her medical provider's direction and despite the absence of authorization from any any other

medical professional, the Defendant Commonwealth ordered the Plaintiff to return to regular full duty to work with corrections officers, effective July 10, 2011.

41. Unbeknownst to the Plaintiff the Defendant Commonwealth caused her medical insurance coverage to be discontinued.

42. On July 7, 2011, the Plaintiff suffered a motorcycle accident.

43. When she sought to utilize her medical insurance she was informed that she was not covered, despite being a long-term employee.

44. The denial of medical insurance coverage was the direct result of administrative actions by the Defendant Commonwealth.

45. As a direct result of denying the Plaintiff medical insurance coverage she incurred over twelve thousand dollars in medical bills

46. In addition, the Plaintiff was denied Family Medical Leave Act (FMLA) leave due to the administrative decisions of the Defendant Commonwealth.

47. In December 2011, the Defendant Commonwealth acknowledged its actions incorrectly resulted in the denial of medical insurance coverage and the denial of FMLA leave.

48. The Plaintiff's medical provider cleared her to return to work (provided she did not work with six specified individuals) in July of 2011.

49. The Defendant Commonwealth refused to assign the Plaintiff to mail room or any other assignment which was separate from the specified six.

50. Other corrections officers on medical leave who had not filed discrimination complaints were permitted to work in the mailroom for periods greater than that approved for the Plaintiff.

51. As a result the Plaintiff was not permitted to return to work until June 2012.

52. From June 2012 through November 2012 the Plaintiff complained of continuous acts of retaliation.

53. In October of 2012 the Plaintiff was given a three day suspension for not parking her motorcycle at a designated parking pad.

54. During the same period and currently, correction officers who have not filed discrimination complaints parked their motorcycles off of the parking pad without disciplinary action.

55. Plaintiff was given a ten day suspension without pay starting on March 28, 2013 for taking time off to recover from her bouts of anxiety; as noted above, stress from retaliatory working conditions caused severe anxiety and depression.

56. This was later reduced to a five day suspension.

57. The refusal to accommodate her disability (anxiety and depression) by punishing her for taking time off to recover were additional acts of retaliation.

58. In April and May of 2013, the Plaintiff earned over seven hundred dollars in overtime pay.

59. Using its failure to properly record her entitlement to FMLA leave , the Defendant Commonwealth demanded and collected over seven hundred dollars from the Plaintiff.

60. In November of 2013 the Plaintiff was given a five day suspension without pay for calling off and attempting to use FMLA leave on the grounds that she did not have enough working hours to use FMLA leave.

61. In fact, the Plaintiff had enough working hours to use FMLA leave.

62. As a direct result of the exacerbation of her anxiety and depression, the Plaintiff utilized paid leave to quell her mental conditions.

63. In May of 2014 the inmate who was convicted by a jury which included the Plaintiff as a juror returned to SCI Camp Hill.

64. He should have been put in RHU and transferred immediately, but remained in general population until late May of 2014, which, again, put

the Plaintiff in danger for almost a month.

    65.    In November of 2014, one of the inmates who established a personal relationship with the female corrections officers that the Plaintiff reported returned to SCI Camp Hill because of a parole violation.

    66.    The Plaintiff was not notified.

    67.    To create animosity toward her, the inmate told other inmates that the Plaintiff was a snitch.

    68.    Defendant Commonwealth knew the Plaintiff was working in the proximity of the inmate, but took no precautions to protect her.

    69.    The Plaintiff learned of the inmate's presence because she learned he married the corrections officer.

    70.    He was not moved until after the Plaintiff complained, In December of 2014.

    71.    The employment practices, as specified hereinbefore, constituted a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C § 2000, *et seq., as amended*, and the Pennsylvania Human Relations Act, 43 Pa. C.S. § 951, *et seq*.

    72.    As a direct result of the intentional and willful violations of her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C § 2000, *et seq., as amended*, and the Pennsylvania Human

Relations Act, 43 Pa. C.S. § 951, *et seq.*, committed by the Defendant Commonwealth of Pennsylvania, Department of Corrections, as specified hereinbefore, Plaintiff has lost wages, paid leave, FMLA leave, medical costs, and other compensation and has suffered embarrassment, humiliation, and mental anguish, to her great damage and loss.

73.   As a direct result of the intentional and willful violations of her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C § 2000, *et seq., as amended*, and the Pennsylvania Human Relations Act, 43 Pa. C.S. § 951, *et seq.*, committed by the Defendant Commonwealth of Pennsylvania, Department of Corrections, as specified hereinbefore, Plaintiff has incurred counsel fees and court and other costs in an effort to seek redress for the violations of her civil rights.

74.   As a direct result of the intentional and willful violations of her rights under Title 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964, 42 U.S.C § 2000, *et seq., as amended*, and the Pennsylvania Human Relations Act, 43 Pa. C.S. § 951, *et seq.*, committed by the Defendant Commonwealth of Pennsylvania, Department of Corrections, as specified hereinbefore, the Defendant is liable to Plaintiff, and the Plaintiff seeks compensatory damages for all losses suffered, and all counsel fees and all costs incurred by Plaintiff in this action for the

deprivation and violation of her civil rights.

**WHEREFORE**, the Plaintiff, Dawn Brown, demands judgment against Defendant Commonwealth of Pennsylvania, Department of Corrections in an amount in excess of $250,000, with interest and costs, plus reasonable counsel fees.

Respectfully submitted,

May 11, 2015

/s/Nathan C. Pringle, Jr.
Nathan C. Pringle, Jr.
Attorney I. D. Number 30142
3544 Progress Avenue
Suite 108
Harrisburg, PA 17110
(717) 541-0002 - Office
(717) 541-1270 - Fax
pringlelaw@comcast.net
Attorney for Plaintiffs