# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAWN L. BROWN,** | : | Civil No. 1:15-CV-918 |
| **Plaintiff,** | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| **COMMONWEALTH OF PENNSYLVANIA, DEPT. OF CORRECTIONS, et al.,** | : | |
| **Defendants.** | : | |

## MEMORANDUM AND ORDER

I. **Factual Background**

  A. **Litigation History**

The plaintiff, Dawn Brown, is a former employee of the Pennsylvania Department of Corrections. In 2015, Brown brought a series of sweeping workplace discrimination claims against her former employers. The instant case was not Brown's first lawsuit against the Department of Corrections. Previously in 2014, Brown had filed a sexual harassment lawsuit against her employer relating to alleged acts of sexual harassment and retaliation which took place beginning in 2009. Brown v. Dep't. of Corrections, Civil No. 1:14-CV-201. In 2017, the court granted summary judgment in favor of all of the defendants, except one defendant who had not been

1

served by Brown. Brown then voluntarily dismissed her lawsuit as to this remaining defendant.

In the meanwhile, Brown filed this second workplace discrimination lawsuit in 2015. This case has been pending for nearly six years. Over the span of this longstanding litigation, the remaining claims in Brown's lawsuit have been narrowed considerably. At this juncture, Brown's sole remaining legal claim is an allegation that she was discharged in July of 2015 in retaliation for the exercise of her First Amendment rights.

Specifically, Brown alleges that she made reports to the FBI and the Governor of Pennsylvania in December 2014 regarding concerns about inmates using cell phones at SCI Camp Hill. (Doc. 70-2, at 1-2). She also claims to have told numerous coworkers that she had made these reports. (Id., at 2). She alleges that her reports to the FBI and the Governor resulted in more disciplinary action taken against her. In particular, on January 13, 2015, Brown received disciplinary action for an incident in which she was accused of leaving her post without proper relief or approval, acting inappropriately after an incident that involved Brown using her unregistered personal handcuffs, refusing to follow direct orders given by her superiors, and possessing a controlled substance without permission. (Doc. 53-5, at 2-5; Doc. 53-31). Brown disputes that she acted inappropriately with respect to all of this

disciplinary action, and thus, she filed a complaint with the EEOC against the DOC on January 15, 2015. (Doc. 70-2, at 17).

Brown later filed criminal complaints against the DOC in the Magisterial District Court No. 13-3-02 and with the Cumberland County District Attorney's Office in April and July of 2015, respectively. (Id., at 17-18). These complaints concerned Brown's allegations of the DOC's violations of the right-to-know laws and its failure to investigate an alleged attempted rape of Brown by another correctional officer. (Id.) Subsequently, on July 30, 2015, Brown spoke with a news outlet regarding the retaliation she was experiencing at SCI Camp Hill. (Id., at 18).

Brown then received what she alleges was a retaliatory termination letter dated July 30, 2015, which stated that her employment with the DOC would be terminated, effective on July 31, 2015. (Doc. 53-5). While Brown insists that the decision to terminate her employment was taken in retaliation for the exercise of her First Amendment rights, the termination letter sets forth numerous instances of misconduct by Brown that the DOC stated were the reasons for Brown's termination. These incidents included: the January 13, 2015 incident involving Brown's use of personal handcuffs and inappropriate behavior, which included disobeying a direct order from her superior and her possession of a controlled substance without permission; her refusal on December 25, 2014 to work a mandated double shift; her inappropriate email to the Deputy Superintendent on December 7, 2014; and

3

inappropriate messages posted on social media, which included the names of correctional staff and inmates at Camp Hill. (Id.) The letter noted that Brown had prior instances of discipline in 2012 and 2013 for ethics code violations, which had included final warnings. (Id., at 5).

### B. Brown's Spoliation Motion

Brown is now representing herself in this lawsuit, her previous counsel having withdrawn due to irreconcilable conflicts with the plaintiff. (Docs. 104-112). In this capacity, acting as her own counsel Brown has filed a spate of motions, including a motion for spoliation sanctions, which invites the court to draw an adverse inference from the alleged failure of the Commonwealth to produce certain items in the course of discovery. (Doc. 163). These items include records relating to the January 2015 handcuffing incident which resulted in disciplinary sanctions against Brown; various prison videos; Brown's leave and personnel records; records from Brown's past EEO proceedings; prison policy statements; an email that Brown allegedly sent to the Secretary of Corrections; and disciplinary files relating to another DOC employee, Todd Smith.

### C. The Defendants' Response

The defendants have responded to this motion for spoliation sanctions by noting that they have produced more than 4,000 pages of material to Brown in the course of this protracted litigation. (Doc. 170). The defendants also note that the

4

discovery deadline in this case passed in October of 2018, and some of the items that Brown now asserts warrant spoliation sanctions were not requested in a timely manner by the plaintiff. (Id.)

As for Brown's specific requests which inspired this sanctions motion, the defendants have stated as follows: First, with respect to the January 2015 handcuffing incident and Brown's request for production of a handcuff registry, this registry was not produced because only an active listing of the handcuff registry is maintained. Thus, as soon as an update is made to the registry, the prior version of the handcuff registry is edited and no longer exists in a form which can be retrieved. In this case, Brown made a request in 2017 for the handcuff registry for a time period of 2006-2015 but the defendants were unable to produce the registry for the requested time period because such a log no longer existed.

Likewise, with respect to Brown's request for video footage of the events pertaining to her attempts to get her handcuffs returned to her, this video footage was not requested during discovery, and the deadline to seek additional discovery has passed. The defendants do not plan to use such video, if it exists, at trial but have made all disciplinary records and related reports available at trial, which may be used by Brown with respect to any discipline she received related to the handcuffing incident.

Brown's request for spoliation sanctions against the defendants due to the alleged failure to produce EEOC records faces similar hurdles. First, it appears that these records were not timely requested by the plaintiff during the course of discovery. In any event, the defendants will have her 2012 EEOC Charge and her 2016 EEOC Charge available at trial with their exhibits.

Further, Brown's motion alluded to a request for video footage of some unspecified incident at an unidentified date in the prison dining hall. This lack of specificity makes a response to the discovery demand challenging. According to the defendants, they do not plan to use such video, if it exists, at trial but they will have all disciplinary records and related reports available at trial, which may be used by Brown in regards to any discipline she received related to a dining hall incident.

With respect to Brown's demand for access to confidential prison policies, it is reported that the parties have reached an appropriate confidentiality agreement addressing this issue and Brown will have access to this information, subject to the terms of the confidentiality agreement. Likewise, the defendants will make the personnel and leave records requested by Brown available for her use at trial.

As for Brown's request for a copy of an email which she allegedly sent to the Secretary of Corrections, defendants note that they are hampered in any search by Brown's lack of specificity and timeliness in making this request. Specifically, the defendants state that no date or other specifying information was included in this

request, and thus the defense is unsure of what specific email Brown may be seeking and there is no record that any such emails were requested during discovery. However, the defendants may have some of emails from Brown and are trying to locate any emails sent by her to Secretary Wetzel in the case file and if any emails are located, they will be made available to the plaintiff.

Finally, as to Brown's request for production of disciplinary records pertaining to another DOC employee, Todd Smith, the defendants note that in July of 2017, they notified the plaintiff that they would not be producing any such highly sensitive personnel records because there were no legal claims related to Smith in her complaint.

### D. Recent Developments

This motion for adverse inference spoliation sanctions is now fully briefed and is therefore ripe for resolution. There have, however, been a number of recent developments which in our view effect our treatment of this motions. In particular, the parties have consented to magistrate judge jurisdiction for the trial of this case and have further agreed to pursue a non-jury trial of this matter. (Doc. 192, 193, 195). We have also conducted a pre-trial conference in this case, requested the defense to further review Ms. Brown's discovery requests, and have received a response from the defense which, in the main, indicates that no further relevant evidence has been found. (Doc. 196).

All of these recent events influence us in ruling on this motion, which seeks an adverse inference at trial due to the alleged spoliation of evidence. In particular, the non-jury trial of this case reduces the urgency and necessity of pre-trial evidentiary rulings like those sought here since:

> [A]ny concern about juror confusion is obviated, and the Court is well-positioned to make judgments regarding the admissibility of evidence within the context of the trial itself. Indeed, although courts will rule on motions in limine in advance of bench trials in appropriate cases, Velez v. Reading Health System, 2016 WL 9776079 (E.D. Pa. Feb. 24, 2016), they often will find it unnecessary to do so because the concerns over prejudice or confusion to a jury are absent. See 9 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure Civil 3d § 2411 (3d ed. 2008); see also United States v. Brown, 2017 WL 219521 (N.D. Ill. Jan. 19, 2017) (noting that concerns over the potential for prejudice from improper evidence "are minimal in bench trials ... rulings on motions in limine are less important."); Alan L. Frank Law Assocs., P.C. v. OOO RM Invest, 2016 WL 9348064 (S.D. Fla. Nov. 30, 2016).

Buhler Versatile Inc. v. GVM, Inc., No. 1:17-CV-00217, 2018 WL 6062307, at *5 (M.D. Pa. Nov. 20, 2018).

Nonetheless, recognizing Ms. Brown's status as a *pro se* litigant, we are addressing this motion to provide her with some guidance moving forward in this litigation. In this case, because we believe that Brown has not made a sufficient showing to justify the extraordinary relief that she seeks, for the reasons set forth below, the motion to compel will be denied. However, at trial the plaintiff may attempt to elicit any testimony regarding intentional spoliation of evidence from the witnesses and may argue such adverse inferences that this trial testimony permits.

## II. Discussion

Rulings regarding the proper scope of discovery are matters consigned to the court's discretion and judgment. A court's decisions regarding the conduct of discovery will be disturbed only upon a showing of abuse of that discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983). This far-reaching discretion also extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J. 1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . ., "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 174 (E.D. Pa. 2004) (citing Scott Paper Co. v. United States, 943 F. Supp. 501, 502 (E.D. Pa. 1996)). Under the standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." Kresefky v. Panasonic Commc'ns and Sys. Co., 169 F.R.D. 54, 64 (D.N.J. 1996); see also Hasbrouck v. BankAmerica Hous. Servs., 190 F.R.D. 42, 44-45 (N.D.N.Y. 1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); EEOC v. Mr. Gold, Inc., 223 F.R.D. 100, 102 (E.D.N.Y. 2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

Halsey v. Pfeiffer, No. 09-1138, 2010 WL 2735702, at *1 (D.N.J. Sept. 27, 2010).

The exercise of this discretion is guided, however, by certain basic principles. In this case, the plaintiff's motion to compel invites the court to draw and adverse inference against the defendants based upon alleged spoliation of evidence. In making this request, however, the plaintiff must be mindful of the precise and exacting standards which govern spoliation claims. "Spoliation occurs where: the evidence was in the party's control; the evidence is relevant to the claims or defenses in the case; *there has been actual suppression or withholding of evidence*; and, the duty to preserve the evidence was reasonably foreseeable to the party." Bull v. United Parcel Serv., Inc., 665 F.3d 68, 73 (3d Cir. 2012) (emphasis added). On this score,

> In assessing a spoliation claim: "[R]elevant authority requires that four (4) factors be satisfied for the rule permitting an adverse inference instruction to apply: 1) the evidence in question must be within the party's control; 2) it must appear that there has been actual suppression or withholding of the evidence; 3) the evidence destroyed or withheld was relevant to claims or defenses; and 4) it was reasonably foreseeable that the evidence would later be discoverable."

Victor v. Lawler, No. 3:08-CV-1374, 2011 WL 1884616, at *2–3 (M.D. Pa. May 18, 2011), on reconsideration, No. 3:08-CV-1374, 2011 WL 4753527 (M.D. Pa. Oct. 7, 2011).

In practice, spoliation litigation rarely turns on issues relating to the first two aspects of this four-part test. In most instances, it is self-evident that: "[1] the evidence was in the party's control; [and] [2] the evidence is relevant to the claims

or defenses in the case." Bull, 665 F.3d at 73. Rather, the critical issues in assessing whether spoliation inferences are proper typically revolve around the latter two aspects of this four-part test; namely, whether: "[3] there has been actual suppression or withholding of evidence; and, [4] the duty to preserve the evidence was reasonably foreseeable to the party." Id.

Turning first to the duty to preserve, the applicable benchmark in this regard is whether that duty was "reasonably foreseeable to the party." Id. "[T]he question of reasonable foreseeability is a 'flexible fact-specific standard that allows a district court to exercise the discretion necessary to confront the myriad factual situations inherent in the spoliation inquiry.'" Bull, 665 F.3d at 77-78 (quoting Micron Technology, Inc. v. Rambus, Inc., 645 F.3d 1311, 1320 (Fed. Cir. 2011)). Thus, a party that reasonably anticipates litigation has an affirmative duty to preserve relevant evidence. Baliotis v. McNeil, 870 F.Supp. 1285, 1290 (M.D. Pa. 1994). As one court has observed in this regard:

> Whether a duty to preserve evidence is reasonably foreseeable is evaluated objectively. Bull, 665 F.3d at 78. "[T]he question of reasonable foreseeability is a 'flexible fact-specific standard that allows a district court to exercise the discretion necessary to confront the myriad factual situations inherent in the spoliation inquiry.' " Id. at 77–78 (internal quotation omitted). "While a litigant is under no duty to keep or retain every document in its possession, even in advance of litigation, it is under a duty to preserve what it knows, or reasonably should know, will likely be requested in reasonably foreseeable litigation." Mosaid, 348 F.Supp.2d at 336 (internal quotation omitted).

11

Bozic v. City of Washington, Pa., 912 F. Supp. 2d 257, 267 (W.D. Pa. 2012). This foreseeability requirement is expressly incorporated into Rule 37 of the Federal Rules of Civil Procedure, which provides that a spoliation inference is only warranted "[i]f electronically stored information *that should have been preserved in the anticipation or conduct of litigation* is lost because a party failed to take reasonable steps to preserve it." Fed. R. Civ. P. 37(e) (emphasis added).

However, a finding that a party had a duty to preserve evidence that was lost will not, by itself, warrant a finding of spoliation. The party seeking a spoliation finding must also prove a culpable state of mind. In this respect:

> For the [spoliation] rule to apply ... it must appear that there has been an actual suppression or withholding of the evidence. *No unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for.* See generally 31A C.J.S. Evidence § 156(2); 29 Am.Jur.2d Evidence § 177 ("Such a presumption or inference arises, however, only when the spoliation or destruction [of evidence] was intentional, and indicates fraud and a desire to suppress the truth, and it does not arise where the destruction was a matter of routine with no fraudulent intent."). Brewer, 72 F.3d at 334 (emphasis added). Therefore, a finding of bad faith is pivotal to a spoliation determination. This only makes sense, since spoliation of documents that are merely withheld, but not destroyed, requires evidence that the documents are actually withheld, rather than—for instance— misplaced. *Withholding requires intent*.

Bull, 665 F.3d at 79 (emphasis added and in original).

Judged against these settled legal benchmarks, we find at this time that Brown simply has not made out a sufficient threshold showing to justify a pre-trial spoliation adverse inference determination, the sanction she requests. In our view, this motion founders on a series of obstacles. First, given the tardiness of these requests, their lack of specificity, and the defendants' report that many of the items sought by Brown no longer exist, there is an insufficient showing of a foreseeable need to preserve this evidence. Brown cannot create a duty to preserve in the abstract or out of some speculative ether. Rather it is well-settled that "the question of reasonable foreseeability is a 'flexible fact-specific standard that allows a district court to exercise the discretion necessary to confront the myriad factual situations inherent in the spoliation inquiry.'" Bull, 665 F.3d at 77-78 (quoting Micron Technology, Inc., 645 F.3d at 1320). In this case, as we confront the myriad factual situations inherent in the spoliation inquiry, it appears that some of the items that now form the basis of Brown's motions were not requested in a timely fashion, or were part of vague and broadly framed requests that were not amenable to a simple response. Further, some of the items sought by Brown, like the handcuff registry, reportedly do not exist.

Furthermore, in other instances, Brown seeks spoliation sanctions even though the defense has agreed to produce information she seeks, such as her own leave records or EEOC files. Concluding as we do that Brown simply has not made

a sufficient showing of a duty to preserve some of the materials that she now seeks, we also find at this time that there is insufficient evidence to warrant the suggestion of bad faith on the defendants' part justifying a pre-trial ruling imposing spoliation sanctions upon the defendants. Conducting this fact-specific inquiry, we simply cannot conclude at this juncture that Ms. Brown has shown that the defendants intentionally destroyed any evidence when the need to preserve those messages was completely unclear. Therefore, as to both of these elements of a spoliation claim, Brown has not made the initial showing that would be necessary to justify pretrial spoliation sanctions ruling. Having reached these conclusions, we will deny Brown's motion for adverse inference spoliation sanctions at the present. (Doc. 163). However, at trial the plaintiff may attempt to elicit any testimony regarding intentional spoliation of evidence from the witnesses and may argue such adverse inferences that this trial testimony permits.

      An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| DAWN L. BROWN, | : | Civil No. 1:15-CV-918 |
| --- | --- | --- |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| COMMONWEALTH OF | : | |
| PENNSYLVANIA, DEPT. OF | : | |
| CORRECTIONS, et al., | : | |
| | : | |
| Defendants. | : | |

## **ORDER**

And now this 13th day of May 2021, in accordance with the accompanying Memorandum, the plaintiff's motion for adverse inference spoliation sanctions. (Doc. 163) is DENIED without prejudice. However, at trial the plaintiff may attempt to elicit any testimony regarding intentional spoliation of evidence from the witnesses and may argue such adverse inferences that this trial testimony permits.

*S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge