IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAWN L. BROWN,** | : | Civil No. 1:15-CV-918 |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| **COMMONWEALTH OF** | : | |
| **PENNSYLVANIA, DEPT. OF** | : | |
| **CORRECTIONS, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## **MEMORANDUM AND ORDER**

### **I.  Factual Background**

The plaintiff, Dawn Brown, is a former employee of the Pennsylvania Department of Corrections. In 2015, Brown brought a series of sweeping workplace discrimination claims against her former employers. The instant case was not Brown's first lawsuit against the Department of Corrections. Previously in 2014, Brown had filed a sexual harassment lawsuit against her employer relating to alleged acts of sexual harassment and retaliation which took place beginning in 2009. Brown v. Dep't. of Corrections, Civil No. 1:14-CV-201. In 2017, the court granted summary judgment in favor of all of the defendants, except one defendant who had not been

1

served by Brown. Brown then voluntarily dismissed her lawsuit as to this remaining defendant.

In the meanwhile, Brown filed this second workplace discrimination lawsuit in 2015. This case has been pending for nearly six years. Over the span of this longstanding litigation, the remaining claims in Brown's lawsuit have been narrowed considerably. At this juncture, Brown's sole remaining legal claim is an allegation that she was discharged in July of 2015 in retaliation for the exercise of her First Amendment rights.

Specifically, Brown alleges that she made reports to the FBI and the Governor of Pennsylvania in December 2014 regarding concerns about inmates using cell phones at SCI Camp Hill. (Doc. 70-2, at 1-2). She also claims to have told numerous coworkers that she had made these reports. (Id., at 2). She alleges that her reports to the FBI and the Governor resulted in more disciplinary action taken against her. In particular, on January 13, 2015, Brown received disciplinary action for an incident in which she was accused of leaving her post without proper relief or approval, acting inappropriately after an incident that involved Brown using her unregistered personal handcuffs, refusing to follow direct orders given by her superiors, and possessing a controlled substance without permission. (Doc. 53-5, at 2-5; Doc. 53-31). Brown disputes that she acted inappropriately with respect to all of this

disciplinary action, and thus, she filed a complaint with the EEOC against the DOC on January 15, 2015. (Doc. 70-2, at 17).

Brown later filed criminal complaints against the DOC in the Magisterial District Court No. 13-3-02 and with the Cumberland County District Attorney's Office in April and July of 2015, respectively. (Id., at 17-18). These complaints concerned Brown's allegations of the DOC's violations of the right-to-know laws and its failure to investigate an alleged attempted rape of Brown by another correctional officer. (Id.) Subsequently, on July 30, 2015, Brown spoke with a news outlet regarding the retaliation she was experiencing at SCI Camp Hill. (Id., at 18).

Brown then received what she alleges was a retaliatory termination letter dated July 30, 2015, which stated that her employment with the DOC would be terminated, effective on July 31, 2015. (Doc. 53-5). While Brown insists that the decision to terminate her employment was taken in retaliation for the exercise of her First Amendment rights, the termination letter sets forth numerous instances of misconduct by Brown that the DOC stated were the reasons for Brown's termination. These incidents included: the January 13, 2015 incident involving Brown's use of personal handcuffs and inappropriate behavior, which included disobeying a direct order from her superior and her possession of a controlled substance without permission; her refusal on December 25, 2014 to work a mandated double shift; her inappropriate email to the Deputy Superintendent on December 7, 2014; and

3

inappropriate messages posted on social media, which included the names of correctional staff and inmates at Camp Hill. (Id.) The letter noted that Brown had prior instances of discipline in 2012 and 2013 for ethics code violations, which had included final warnings. (Id., at 5).

Brown is now representing herself in this lawsuit, her previous counsel having withdrawn due to irreconcilable conflicts with the plaintiff. (Docs. 104-12). In this capacity, as the trial has approached, we have been engaged in a dialogue with Brown regarding witnesses and her responsibilities with respect to subpoenaing witnesses. Brown initially filed a pleading styled as a motion for subpoenas. (Doc. 136). While Brown indicated in this pleading that she wished to issue trial subpoenas with our assistance, Brown did not identify who she intends to subpoena, or what relevant testimony she may seek from these potential trial witnesses, information that would be crucial to any informed understanding of the motion. Noting these shortcomings, the defendants opposed the motion in its current form and recommended that the court deny the motion without prejudice to renewal of the motion following a pre-trial conference between the parties, at which time the parties could identify witnesses and address these subpoena issues for the court in a fully informed fashion. (Doc. 144). Since Brown had not provided us with any of the information necessary to making a determination regarding whether trial subpoenas should issue, we denied this motion without prejudice to renewal in a proper format

following the pretrial conference of counsel and requested that Brown identify her proposed witnesses and provide a proffer of their relevance to the narrow and specific issues which remain in this case. (Doc. 150).

Brown then submitted a proposed witness list (Doc. 184), which listed more than 100 witnesses. (Doc. 184). It was difficult to discern from Brown's submission how many of these witnesses related to Brown's remaining claims in this lawsuit. We then addressed this issue with Ms. Brown at the May 4 conference in this case, explaining to her that she bore the cost of subpoenaing witnesses, that the witnesses needed to be relevant to the remaining issues in this case, and that the witnesses could not be unduly cumulative. In light of this guidance, we directed Ms. Brown to provide an updated witness list and proffer of relevance by May 12 and suggested to Ms. Brown that she may wish to identify 10 to 20 of the most critical witnesses for her case. (Docs. 191, 194).

Ms. Brown has now filed an updated witness list (Doc. 197), which lists approximately 75 potential witnesses. Once again, it is difficult to discern which of these witnesses are directly relevant to the remaining claims in this lawsuit. Moreover, this list appears to be unduly cumulative since, in some instances, dozens of individuals are listed as witnesses under some general topic heading. Further, some of the proposed witnesses appear to relate to legal claims that are not in this

lawsuit, or are officials who did not work with the plaintiff at SCI Camp Hill, where the events in this case are alleged to have occurred.

We note that the parties have consented to magistrate judge jurisdiction for the trial of this case and have further agreed to pursue a non-jury trial of this matter. (Docs. 192, 193, 195). The non-jury trial of this case reduces the urgency and necessity of pre-trial evidentiary rulings regarding witnesses since:

> [A]ny concern about juror confusion is obviated, and the Court is well-positioned to make judgments regarding the admissibility of evidence within the context of the trial itself. Indeed, although courts will rule on motions in limine in advance of bench trials in appropriate cases, Velez v. Reading Health System, 2016 WL 9776079 (E.D. Pa. Feb. 24, 2016), they often will find it unnecessary to do so because the concerns over prejudice or confusion to a jury are absent. See 9 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure Civil 3d § 2411 (3d ed. 2008); see also United States v. Brown, 2017 WL 219521 (N.D. Ill. Jan. 19, 2017) (noting that concerns over the potential for prejudice from improper evidence "are minimal in bench trials ... rulings on motions in limine are less important."); Alan L. Frank Law Assocs., P.C. v. OOO RM Invest, 2016 WL 9348064 (S.D. Fla. Nov. 30, 2016).

Buhler Versatile Inc. v. GVM, Inc., No. 1:17-CV-00217, 2018 WL 6062307, at *5 (M.D. Pa. Nov. 20, 2018).

Nonetheless, recognizing Ms. Brown's status as a *pro se* litigant and the financial and logistical burdens she faces in subpoenaing witnesses, we are addressing this issue once again to provide her with some further guidance moving forward in this litigation.

## II. Discussion

Rule 45 confers broad enforcement powers upon the court to ensure compliance with subpoenas, while avoiding unfair prejudice to persons who are the subject of a subpoena's commands. In this regard, it is well settled that decisions on matters pertaining to subpoena compliance rest in the sound discretion of the trial court and will not be disturbed absent a showing of an abuse of that discretion. R.J. Reynolds Tobacco v. Philip Morris Inc, 29 F. App'x 880, 881 (3d Cir. 2002). However, the exercise of this discretion is governed by several considerations.

First, the trial subpoenas must seek information and evidence that is relevant to the remaining issues in this case. On this score,

> Under [Rule] 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." [Therefore] "[i]t follows that evidence is irrelevant only when it has no tendency to prove the fact. Thus the rule, while giving judges great freedom to admit evidence, diminishes substantially their authority to exclude evidence as irrelevant."

Frank v. Cnty. of Hudson, 924 F. Supp. 620, 626 (D.N.J. 1996) (citing Spain v. Gallegos, 26 F.3d 439, 452 (3d Cir. 1994) (quotations omitted)). Rule 402 of the Federal Rules of Evidence, in turn, provides that all "[r]elevant evidence will be admissible unless the rules of evidence provide to the contrary." United States v. Sriyuth, 98 F.3d 739, 745 (3d Cir. 1996) (citations omitted). The relevant issues in this case relate to Ms. Brown's claims of retaliation against her in January and July

7

of 2015. Witnesses identified by the plaintiff should, therefore, have evidence relevant to these specific, surviving allegations in this lawsuit.

This principle is then tempered by Rule 403 of the Federal Rules of Evidence which sets legal grounds for exclusion of some evidence, stating that:

> Although relevant, evidence may be excluded if its probative value **is** substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed. R. Evid. 403.

Application of this principle in the instant case also means that as Ms. Brown identifies the most relevant witnesses in this case, she should avoid listing unduly cumulative witnesses. See Williams v. City of Harrisburg, No. CIV A 1:CV-03-2339, 2006 WL 2382279, at *3 (M.D. Pa. Aug. 17, 2006).

In addition, Brown should understand that plaintiff will be required to arrange for service of the subpoenas and must tender the witness fee and the fees for any mileage allowed by law at the time of service. See 28 U.S.C. § 1821; Fed. R. Civ. P. 45(b) (setting forth service requirements); see also Canady v. Kreider, 892 F.Supp. 668, 670 (M.D. Pa. 1995) (finding that there is no statutory provision authorizing a federal court to waive or provide for payment of witness fees required by 28 U.S.C. § 1821(a), and accordingly holding that "a litigant proceeding *in forma pauperis* is required to tender witness fees as provided in § 1821 to effect service of subpoenas under Rule 45(b)(1)"); Lyons v. Beard, No. 3:07-CV-444, 2011 WL 3649977, at *2

(M.D. Pa. Aug. 18, 2011). Therefore, Ms. Brown must be prepared to tender the witness fee in advance to any witness she proposes to subpoena. Finally, Ms. Brown should understand that normally parties must arrange for the service of any subpoenas. Therefore, if Ms. Brown is seeking the court's assistance in serving subpoenas she must: (1) request that assistance; and (2) be mindful of the need to have a witness list that is tailored to the issues and needs of this case.

**III. <u>Order</u>**

Accordingly, IT IS ORDERED as follows:

In her pretrial memorandum, which shall be submitted on **May 25, 2021**, the plaintiff should provide a tailored witness list that is not unduly cumulative and relates to the remaining issues in this lawsuit, along with a proffer of relevance for each witness she requests. The plaintiff must also be prepared to pay the witness fees prescribed by statute. It is recommended that the plaintiff strive to identify the 10 to 20 most relevant witnesses in her case. The issue of witnesses will then be further addressed by the court at this pre-trial conference scheduled on **May 27, 2021 at 10:00 a.m.**

SO ORDERED this 17th day of May 2021.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge
